UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| RN ENTERTAINMENT, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:19-cv-00152 |
| | ) | |
| DAVID CLEMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Joint Partial Motion to Dismiss. (Doc. No. 41.) RN Entertainment, LLC ("RN") has responded in opposition, to which Defendants have replied. (Doc. Nos. 52, 53.) For the reasons stated below, the motion will be granted in part and denied in part.

## I. First Amended Verified Complaint

On March 25, 2019, RN filed a First Amended Verified Complaint (the "Complaint"). (Doc. No. 36.) In the Complaint, RN avers that it owns and operates a fleet of luxury tour buses that it rents or leases to individual musicians or touring companies. (Id. at 3-4.) RN also owns one "crew coach," designed to carry a musician's road crew, that it also rents and leases. (Id. at 4.) To the extent that musicians need additional crew coaches, RN rents or leases additional crew coaches from third-parties and supplies the rented crew coaches to the customer. (Id.)

RN alleges that, after working as a coach driver for more than a decade, it promoted David Clement to General Manager. (Id. at 5.) As General Manager, Clement was responsible for business development, customer relations, and managing RN's tours. (Id.) Clement worked out of RN's Lebanon, Tennessee office, where he also managed RN's Tennessee employees. (Id.) Shortly

after hiring Clement, RN hired Cathy Preiss as the leasing agent and bookkeeper for the Lebanon, Tennessee office. (Id. at 6.) Clement and Preiss were familiar with one another as they were both previous employees of a third-party competitor. (Id.)

According to the Complaint, in their roles, Clement and Preiss had access to RN's confidential and proprietary business information (i.e., financials, customer lists and prospects, and business development materials). (Id.) In June 2013, Clement, with RN's approval, formed On The Road, LLC ("On the Road") for the purpose of securing a motor vehicle carrier license for RN's business use. (Id.) Two years later, in 2015, RN acquired its own motor vehicle carrier license, eliminating the need for On the Road's existence. (Id. at 7.) RN offered to buy On the Road from Clement, but Clement refused. (Id.) RN then insisted that Clement dissolve On the Road, and Clement represented that he would do so. (Id.)

Two years later, in 2017, Clement and Preiss began using On the Road (which had not been dissolved) as a vehicle to operate a competing tour bus rental company. (Id. at 8-9.) RN alleges that Clement and Preiss rented coaches from third-parties and then supplied those third-party tour bus rentals to customers through On the Road. (Id.) Further, it is alleged that Clement and Preiss used RN's Lebanon, Tennessee office staff as On the Road employees. (Id.) Critically, RN alleges that Clement and Preiss used its proprietary customer information and other financials to build their business and siphon customers from RN to On the Road. (Id. at 9-10.)

Given that On the Road was nested inside RN, the two companies were inextricably intertwined in a variety of ways. For example, Clement and Preiss's On the Road email addresses were created and maintained within RN's GoDaddy email account. (Id. at 10.) Similarly, RN alleges that Clement and Preiss used virtually all of its electronic devices (laptops, phones, applications) to operate On the Road. (Id. at 10-11.) Eventually, Clement and Preiss allegedly

converted the Lebanon office into On the Road's place of business. (Id. at 11.) Clement and Preiss would use RN's fleet to lure customers in, then, once a deal was in place with On the Road, they would rent or lease coaches from third-parties to supply customers. (Id.) Essentially, as alleged in the Complaint, although both Clement and Preiss were RN employees, they ran a simultaneously competing business using proprietary information gained from RN as well as the company's employees and other resources. (Id. at 12.) There are no allegations of any contractual employment relationship.

Subsequently, in February 2019, RN discovered these activities and promptly terminated both Clement and Preiss. (Id. at 13.) After they were terminated, Clement and Preiss allegedly began interfering with and obstructing access to RN's email and web-hosting services. (Id.) Specifically, Clement and Preiss moved or deleted emails from RN's GoDaddy account and failed to turn over passwords to RN's email and web-hosting servers, effectively depriving it from accessing its website and email archives. (Id. at 13-14.) RN also alleges that Clement made false, denigrating statements about RN to vendors and customers. (Id. at 14-15.) As a result, RN brings claims for: (1) violation of the Computer Fraud and Abuse Act ("CFAA"); (2) civil conspiracy in violation of the CFAA; (3) intentional interference with business relationship; (4) unfair competition; (5) breach of fiduciary duty; (6) civil conspiracy; and (7) disparagement. (Id. at 15-23.) Clement, Preiss, and On the Road then filed the instant joint motion. (Doc. No. 41.)

## II. **Defendants' Joint Partial Motion to Dismiss**

In the Joint Partial Motion to Dismiss, Defendants first argue that RN's CFAA claims must be dismissed because the claims fail to include any factual allegation that RN suffered "damage" as that word is defined in the CFAA. (Doc. No. 42 at 4.) Further, Defendants contend that RN fails to show how Preiss or Clement lacked authorization to access the proprietary information. (Id.)

Rather, Defendants contend that the Complaint merely alleges that Clement and Preiss used RN's computers and information to operate a competing business (i.e., that they used the information they were authorized to access for an allegedly unauthorized purpose), which is insufficient to state a claim under the CFAA. (Id.) Defendants also assert that RN's breach of fiduciary duty, unfair competition, and civil conspiracy claims are preempted by the Tennessee Uniform Trade Secrets Act ("TUTSA"). (Id. at 4-7.) Moreover, Defendants argue that RN's civil conspiracy claim: (1) lacks an underlying predicate tort; and (2) fails pursuant to the intracorporate immunity doctrine. (Id. at 6.)

RN responds in opposition, first arguing that its CFAA claim is well-pled because it alleges both damage that satisfies the statutory definition and conduct that violates the statute. (Doc. No. 52 at 3.) RN maintains that Defendants' use of its computers and proprietary information to operate a competing business and obstruction of web-hosting and email access after Clement and Preiss's termination was in violation of the CFAA. (Id. at 3-6.) RN also contends that these actions give rise to a CFAA conspiracy claim. (Id. at 6.) Further, RN argues that its state common law claims are not preempted by the TUTSA because that statute only preempts trade secret claims, which are not asserted. (Id. at 7-9.) Finally, RN argues that its civil conspiracy claim is sufficient because it alleges that Clement and Preiss conspired against it and includes allegations of multiple qualifying predicate torts. (Id. at 9-10.)

### III. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim."

Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**IV. Computer Fraud and Abuse Act**

The CFAA prohibits certain conduct involving unauthorized access to computers. See 18 U.S.C. § 1030(a)(1)-(a)(7). Although the CFAA is primarily a criminal statute, it also permits "[a]ny person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." Id. § 1030(g).

Here, RN asserts that Defendants violated subsection (a)(2)(C) of 18 U.S.C. § 1030, which prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer"; subsection (a)(4), which prohibits "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value"; and subsection (a)(5), which provides liability on the part of any person who:

> (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
>
> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a)(5).

Thus, for all civil claims under the CFAA, a plaintiff must show that the defendant's access to the protected computer was either "without authorization" or that it "exceed[ed] authorized access." Id. Further, the scope of the CFAA is limited to civil claims premised upon "conduct involv[ing] 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). The only subclause in the referenced subsection that is relevant to the present action requires the showing of "loss to 1 or more persons during any 1–year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). It is under this provision that RN asserts its CFAA claims.

Defendants seek dismissal of RN's CFAA claims on the basis that RN has not alleged that Clement and Preiss's access was either without authorization or in excess of their authorization. Defendants also argue, in the alternative, that RN has failed to allege facts suggesting it suffered "damage" or "loss," as those terms are defined by the CFAA, by any action taken by the Defendants. The Court finds that, although the bulk of the alleged activity asserted by RN is not actionable under the CFAA, the alleged impairment of RN's access to its email and website are sufficient to withstand Defendants' motion.

It is clear from the allegations in the Complaint that Clement and Preiss, as RN's General Manager and leasing agent/bookkeeper respectively, were authorized to access the proprietary

customer lists and other confidential information while employed at RN. The gravamen of RN's CFAA claims is that Clement and Preiss unlawfully exceeded their authorization by using that information to set up and operate a competing business and siphon away its customers. (See Doc. No. 36 at 15-18.) There is a circuit split on whether this type of alleged "use activity" violates the CFAA.

In Ajuba Int'l, L.L.C. v. Saharia, 871 F. Supp. 2d 671, 686-87 (E.D. Mich. 2012), the court aptly summarized the two approaches taken by courts that have analyzed the CFAA's "exceeds authorized access" language:

> Some courts have construed the terms narrowly, holding that an employee's misuse or misappropriation of an employer's business information is not "without authorization" so long as the employer has given the employee permission to access such information. See LVRC Holdings L.L.C. v. Brekka, 581 F.3d 1127 (9th Cir. 2009) (holding that that the CFAA targets the unauthorized procurement or alteration of information rather than its misuse); Orbit One Commc'ns, Inc. v. Numerex Corp., 692 F.Supp.2d 373, 385 (S.D. N.Y. 2010) ("The plain language of the CFAA supports a narrow reading. The CFAA expressly prohibits improper 'access' of computer information. It does not prohibit misuse or misappropriation.") . . . In other words, courts adopting the narrow approach hold that, once an employee is granted "authorization" to access an employer's computer that stores confidential company data, that employee does not violate the CFAA regardless of how he subsequently uses the information.
>
> Other courts have construed the terms broadly, finding that the CFAA covers violations of an employer's computer use restrictions or a breach of the duty of loyalty under the agency doctrine. See United States v. Rodriguez, 628 F.3d 1258 (11th Cir. 2010); United States v. John, 597 F.3d 263 (5th Cir. 2010); Int'l Airport Ctrs., L.L.C. v. Citrin, 440 F.3d 418 (7th Cir. 2006); EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577 (1st Cir. 2001). The broad approach holds that "an employee accesses a computer 'without authorization' whenever the employee, without the employer's knowledge, acquires an interest that is adverse to that of his employer or is guilty of a serious breach of loyalty." Guest-Tek Interactive Entm't, Inc. v. Pullen, 665 F.Supp.2d 42, 45 (D. Mass. 2009).

The Sixth Circuit has not directly addressed this issue. Id. However, the majority of district courts in the Sixth Circuit to confront this issue, including this Court, have adopted the narrow approach. See Experian Mktg. Sols., Inc. v. Lehman, Case No. 15-CV-476, 2015 WL 5714541, at *5 (W.D.

7

Mich. Sept. 29, 2015); Cranel Inc. v. Pro Image Consultants Grp., LLC, 57 F. Supp. 3d 838, 845 (S.D. Ohio 2014); Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc., No. 10-CV-450, 2012 WL 2524008, *5 (W.D. Mich. June 29, 2012); ReMedPar, Inc. v. AllParts Med., L.L.C., 683 F. Supp. 2d 605, 609 (M.D. Tenn. 2010); Black & Decker, Inc. v. Smith, 568 F. Supp. 2d 929 (W.D. Tenn. 2008); Am. Family Mut. Ins. Co. v. Rickman, 554 F. Supp. 2d 766, 771 (N.D. Ohio 2008).

Accordingly, based on this Court's narrow plain language application of the CFAA, to the extent that RN's CFAA claim alleges that Clement and Preiss's "unauthorized access" stems from their alleged improper use of proprietary computer information to form and operate On the Road as a competing business, those allegations do not state a claim under the CFAA. However, to the extent that RN alleges that Clement and Preiss withheld passwords, deleted emails, and otherwise impaired RN's access to its website and email servers after their termination, those allegations do state a claim under the CFAA. See 18 U.S.C. § 1030(a)(4) (prohibiting knowingly and with intent to defraud, accessing a protected computer without authorization, or exceeding authorized access, and by means of such conduct furthering the intended fraud and obtaining anything of value.) The Court also finds that these allegations sufficiently demonstrate that RN suffered damage and loss as those terms are defined in the CFAA. Therefore, on this basis, RN's CFAA and CFAA conspiracy claims will be allowed to proceed.

**V. State Law Claims**

    A. Tennessee Uniform Trade Secrets Act

The TUTSA displaces "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47–25–1708(a). However, the Act does not affect "[c]ontractual remedies" or "civil remedies that are not based

8

upon misappropriation of a trade secret." Tenn. Code Ann. § 47–25–1708(b). The TUTSA defines a "trade secret" as follows:

> [I]nformation, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:
>
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4).

The Sixth Circuit has identified several factors to consider in determining whether something constitutes a "trade secret" under this definition, including "the extent of public knowledge; measures taken to guard its secrecy; the value of the information both to the business and to its competitors; money that was spent to develop the information; and the ease or difficulty with which it could be acquired by outsiders." PartyLite Gifts, Inc. v. Swiss Colony Occasions, 246 F. App'x. 969, 973 (6th Cir. 2007) (citing Wright Med. Tech., Inc. v. Grisoni, 135 S.W.3d 561, 589 (Tenn. Ct. App. 2001)). The Tennessee Court of Appeals has further described a trade secret as "any secret formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it." Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 645 (Tenn. Ct. App. 1999) (internal citations and quotations omitted).

"The precise scope of the [TUTSA's] preemption clause has not been interpreted uniformly across . . . jurisdictions." Stolle Mach. Co., LLC v. RAM Precision Indus., 605 F. App'x. 473, 484 (6th Cir. 2015). This Court has endorsed the "'same proof' test" adopted by the Eastern District of Tennessee in Hauck Manufacturing Co. v. Astec Industries, Inc., 375 F. Supp. 2d 649 (E.D. Tenn.

9

2004). See Cardinal Health 414, Inc. v. Adams, 582 F. Supp. 2d 967, 985 (M.D. Tenn. 2008). Pursuant to that test:

> [A] claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the UTSA. Stated another way, if proof of a non–UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it.

Hauck, 375 F. Supp. 2d at 658. Accordingly, the Court will apply the same proof test to RN's state common law claims to determine if the claims are preempted by the TUTSA.

B. Breach of Fiduciary Duty

In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." In re Estate of Potter, No. W2016–01809–COA–R3–CV, 2017 WL 4546788, at *2 (Tenn. Ct. App. Oct. 11, 2017) (quoting Ann Taylor Realtors, Inc. v. Sporu, No. W2010–00188–COA–R3–CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010)). A breach of fiduciary duty claim may be preempted under the "same proof" test, if that claim "is based on a misappropriation of protected information." PGT Trucking, Inc. v. Jones, No. 15–1032, 2015 WL 4094265, at *4 (W.D. Tenn. July 7, 2015).

First, contrary to RN's argument, the proprietary and confidential information at issue qualifies as "trade secrets" under the TUTSA.[1] Although not specifically delineated, the Complaint

---

[1] In its response, RN argues that it does not use the term "trade secrets" anywhere in its Complaint and does not assert a claim under the TUTSA, so its common law claims cannot be preempted. First, RN's definitional maneuvering does not limit the Court from considering the gravamen of the claim. Adams, 582 F. Supp. 2d at 985 ("[I]t is clear that, in order for the preemption statute to have any force, the court must look at what the overarching substance of the plaintiff's allegation is."). Second, that RN does not assert a TUTSA claim does not prevent its common-law claims from being preempted. This argument is incompatible with the Court's adoption of the same proof test, which requires that a claim be deemed preempted if it rises or falls

makes plain that this information was: (1) of great economic value to RN; (2) not generally known to the public or its business competitors; (3) kept secure by RN; and (4) the product of significant time and resource investment by RN. Put simply, the information was vital to RN's business and gave it an opportunity to obtain advantage over competitors, and, therefore, it qualifies as trade secrets under the TUTSA. Cross, 17 S.W.3d at 645.

Here, the breach of fiduciary duty claim, as pleaded, clearly encompasses some theories of liability that are preempted under the TUTSA. Significantly, the allegation that Clement and Preiss violated their fiduciary duties by using RN's confidential and proprietary business and financial information for the benefit of themselves and On the Road is preempted by the TUTSA because this allegation rises or falls on whether they are found to have misappropriated a trade secret. (See Doc. No. 36 at 22.) Accordingly, the breach of fiduciary duty claim must stand or fall based only on those remaining allegations that can be proven without simultaneously establishing misappropriation of a trade secret.

However, the Complaint also alleges that Clement and Preiss violated their fiduciary duties by: (1) reinstating One the Road with the purpose of operating it as a competing business; (2) recruiting Lebanon, Tennessee employees to assist in the operation of One the Road while still employed by RN; and (3) soliciting business from RN's existing and prospective customers. (Doc. No. 36 at 21-22.) Similar breach of fiduciary allegations have been held not to be preempted by the TUTSA. See Ram Tool & Supply Co., v. HD Supply Constr. Supply Ltd., No. M2013–02264–COA–R3–CV, 2016 WL 4008718, at *5 (Tenn. Ct. App. July 21, 2016) (holding that breach of fiduciary duty claim alleging defendant solicited employees to work for competitor while still

---

based on whether the defendant is found to have misappropriated a trade secret, not whether the plaintiff has also formally asserted a TUTSA claim. Hauck, 375 F. Supp. 2d at 658.

11

employed by plaintiff was not preempted by TUTSA). Accordingly, the Court will not dismiss RN's breach of fiduciary duty at this juncture because it is not wholly preempted by the TUTSA.

### C. Unfair Competition

"Unfair competition is a broad term encompassing several related torts involving improper interference with business prospects." J.T. Shannon Lumber Co. v. Barrett, No. 2:08–cv–2847–JPM–cgc, 2010 WL 3069818, at *13 (W.D. Tenn. Aug. 4, 2010) (internal quotations and citations omitted). A plaintiff bringing an unfair competition claim "must show that (1) the defendant engaged in conduct that amounts to a recognized tort and (2) that tort deprives the plaintiff of customers or other prospects." Id. (citing B & L Corp. v. Thomas & Thorngren, Inc., 162 S.W.3d 189, 216 (Tenn. Ct. App. 2004)). Courts applying Tennessee law have found such unfair competition claims to be preempted under TUTSA when the claim is based on the defendant's misappropriation of trade secrets. See ProductiveMD, LLC v. 4UMD, LLC, 821 F. Supp. 2d 955, 966 (M.D. Tenn. 2011) ("[T]he Court will dismiss ProductiveMD's unfair competition claim to the extent that it is based upon the alleged theft and use of trade secrets because of the preemption provision of the TUTSA."); J.T. Shannon Lumber Co., 2010 WL 3069818, at 13 ("Plaintiff's unfair competition [claim] is preempted, however, to the extent that Plaintiff alleges that it lost customers or business prospects because of Defendant's alleged misappropriation of proprietary or confidential information.").

Unlike RN's breach of fiduciary duty claim, which contains distinct supporting allegations not involving use of the proprietary and confidential information, the unfair competition claim appears to largely rest on Clement and Preiss's alleged misappropriation of that information. (See Doc. No. 36 at 20—21.) Thus, under the "same proof" test, RN's unfair competition is preempted

12

by the TUTSA. Hauck, 375 F. Supp. 2d at 658. Accordingly, the Court will dismiss the unfair competition claim.

      D. Civil Conspiracy

Under Tennessee law, the elements of a cause of action for civil conspiracy are (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) injury to the person or property resulting in attendant damage. Braswell v. Carothers, 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993). In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy. See Hauck, 375 F. Supp. 2d at 660. Put simply, under Tennessee law, an actionable civil conspiracy is "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose by unlawful means, which result in damage to the plaintiff." Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002). However, "where the alleged co-conspirator is an agent or employee of the same corporate entity . . . Tennessee recognizes the 'intracorporate conspiracy immunity doctrine.'" Shipwash v. United Airlines, Inc., 28 F. Supp. 3d 740, 749 (E.D. Tenn. 2014) (quoting Trau-Med, 71 S.W.3d at 703). Under this doctrine, "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its [employees]," who are "acting within the scope of their employment." Trau-Med, 71 S.W.3d at 703–04.

First, to the extent that RN's civil conspiracy claim rests on Clement and Preiss's access and use of "confidential and proprietary business and financial information for the benefit of themselves and On the Road," the claim is preempted by the TUTSA. See J.T. Shannon Lumber Co., 2010 WL 3069818, at *13 ("The Court finds that Plaintiff's allegations indicate that the

13

overriding object of the conspiracy was to disseminate Plaintiff's confidential and proprietary information. Plaintiff's civil conspiracy claim is based upon alleged misappropriation of trade secrets and is therefore preempted by TUTSA.") However, unlike in J.T. Shannon, the overriding object of the alleged conspiracy was not to disseminate RN's confidential and proprietary information, but, rather, to operate On the Road as a competing business. (See Doc. No. 36 at 22-23.) This activity included recruiting RN's Lebanon, Tennessee workforce to work for On the Road's endeavors, soliciting RN's existing customer base, and using On the Road as a competing business entity. (Id.) Accordingly, the civil conspiracy claim does not rise or fall with whether Clement and Preiss misappropriated trade secrets, but, rather hinges on the use of On the Road as a competing business. Therefore, RN's civil conspiracy claim is not wholly preempted by the TUTSA.

Nor does the intracorporate immunity doctrine bar RN's civil conspiracy claim. At bottom, Defendants argue that RN's "entire case rests upon the allegation that Clement and Preiss were acting outside the scope of their employment with [RN] and, critically, within the scope of their employment with and for the benefit of On the Road—i.e., an intracorporate conspiracy." (Doc. No. 53 at 3.) Defendants are correct that RN's civil conspiracy claim essentially alleges: (1) Clement and Preiss worked together; (2) to form On the Road as a competing business with RN; (3) this action required multiple steps including recruiting employees from the Lebanon, Tennessee office, using On the Road as a business entity, and soliciting customers; and (4) these actions financially harmed RN. (See Doc. No. 36 at 22.) This is a far different situation than one "where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment." Trau-Med, 71 S.W. 3d at 703.

Moreover, definitively determining that the intracorporate immunity doctrine applies would force the Court to resolve several factual issues such as: (1) when Clement and Preiss decided to form On the Road; (2) when On the Road was formed as a business entity; (3) when Clement and Preiss were engaged as employees with On the Road. These kinds of factual determinations are inappropriate for a Rule 12(b)(6) motion, and the Court believes that the better course of action is to allow development of the factual issues through discovery to aid the ultimate disposition of the issues, whether through additional dispositive motions or more likely at trial. See Moher v. United States, 875 F. Supp. 2d 739, 757 (W.D. Mich. 2012) ("These disputed [factual] issues may be decided either at trial or on summary judgment under Fed. R. Civ. P. 56, but cannot be decided on a Rule 12(b)(6) motion to dismiss.") Additionally, to the extent that Defendants argue there is no predicate tort for the civil conspiracy claim, the still-pending breach of fiduciary duty and intentional interference with a business relationship claims are sufficient at this point to serve as predicates for the civil conspiracy claim.

## VI. Conclusion

For these reasons, Defendants' Joint Partial Motion to Dismiss will be granted in part and denied in part. The unfair competition claim will be dismissed, and the remaining claims will be allowed to proceed.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE